## Thompson v. Elliott Company

*John W. Pollins,* for plaintiff.
*Kenneth W. Gaul,* for defendants.

AMBROSE, *J.,* February 2, 1987—This case involves a dispute over payment of medical expenses resulting from decedent's involvement in an automobile accident on August 6, 1980. Following the accident, decedent was treated at Latrobe Area Hospital. Her medical expenses were paid by Allstate Insurance Company, her no-fault carrier, under an automobile policy issued under the terms of the No-fault Motor Vehicle Act as it was then in effect. 40 P.S. §1009.101 et seq. (repealed, effective October 1, 1984).

The same medical bills paid by Allstate were also paid to the hospital by defendant Connecticut General Life Insurance Company, the issuer of a group health insurance policy to the employer of decedent's husband, defendant Elliott Company. Thereafter, Connecticut General sought, and received, a refund of its medical bill payments from Latrobe Area Hospital. Plaintiff has filed this action, claiming that he is entitled to receive the payment made by Connecticut General for the medical expenses. Defendant denies that plaintiff is entitled to receive any payment for medical expenses and has filed a motion for summary judgment, requesting that judgment be issued in its favor now.

There have been several cases in the federal courts and our appellate courts which have discussed the issue of "double recovery." In *Killen v. Travelers Insurance Company,* 721 F.2d 87 (1983), the court explained and justified "double recovery" as follows:

"If an individual, injured in an automobile accident, is covered by a no-fault automobile insurance policy and, in addition, by a general health and acci-

dent policy, he or she may be entitled to reimbursement under each such policy for hospital and medical expenses incurred as a result of a motor vehicle accident. What amounts to a double recovery is allowed because the insured has paid two premiums and is entitled to the benefits purchased under each policy."

Under this theory, the courts have approved double payment of medical expenses. See *Steppling v. Pennsylvania Manufacturer's Association Ins. Co.,* 328 Pa. Super. 419, 477 A.2d 515 (1984). In *Steppling,* the Superior Court held that a no-fault claimant was entitled to recover basic loss benefits from a no-fault insurer even though the claimant had received compensation for the same expenses from a private program of insurance.

Defendant, however, contends that double recovery may not be had by plaintiff in this case because the coordination of benefits clause in the Connecticut General policy entitles Connecticut General to refuse payment of medical expenses already paid by a no-fault insurer.

The coordination of benefits clause contained in the Connecticut General policy states as follows:

"If an employee or dependent insured for medical expense insurance . . . under any section of this contract (hereinafter referred to as the plan) is also recovered under one or more other group plans, the benefits payable with respect to him under this plan will be coordinated with the benefits payable with respect to him under all other group plans.

"For the purposes of this coordination of benefits section, the term group plan will be considered to include the mandatory portion of any group or individual automobile insurance policy written under the 'no-fault' insurance provisions of any state or federal law."

Defendant contends that this clause clearly and unambiguously precludes double recovery by plaintiff, and that nothing in the No-fault Act prohibits Connecticut General's coordination of benefits policy. Connecticut General further argues that it is merely enforcing a contractual agreement that exists between it and plaintiff by virtue of the provisions of the health insurance policy. Finally, Connecticut General argues that the application of the coordination of benefits provision in this case would be in furtherance of the public policy against duplication of benefits and double recoveries.

Thus, plaintiff's right to recover money initially paid by Connecticut General to Latrobe Area Hospital and then refunded to Connecticut General turns on the validity and enforceability of the coordination of benefits provision of the group health policy issued by Connecticut General. Plaintiff contends that Connecticut General, through the coordination of benefits policy, is attempting to acquire a subrogation interest in Allstate's no-fault pr niums and is thereby violating section 111(1) (4) of the No-fault Act:

"In no event shall any entity providing benefits other than no-fault benefits to an individual as described in section 203 of this act, have any right of subrogation with respect to said benefits." 40 P.S. §1009.111(a) (4).

Subrogation is the right of an insurer to step into the shoes of a party whom they have rightfully compensated and sue any party whom the compensated party could have sued. Black's Law Dictionary, 1279 (5th Ed. 1979).

In this case, the right to reimbursement from Latrobe Area Hospital, enforced by Connecticut General, refers to its right to coordinate benefits paid to the insured with benefits paid to him or her under

other group plans. Connecticut General is not stepping into the insured's shoes and making a claim against a party the insured could have sued. Rather, Connecticut General is merely attempting to enforce an agreement it has with the insured. Under these circumsances, the coordination of benefits provison does not violate section 111(a) (4) of the No-fault Act, *supra*.

Finally, an examination of Connecticut General's policy indicates that the coordination of benefits provision is enforceable as a matter of contract law. *Standard Venetian Blind Co. v. American Empire Ins. Co.* 503 Pa. 300, 469 A.2d 563 (1983), established the rule of contract law that an insured may not avoid the consequences of clear and unambiguous policy povisions, even if he is unaware of the limitations of the provisions. In this case, Connecticut General's policy clearly provides for the coordination of benefits "with benefits payable with respect to him (the insured) under all other group plans."

Furthermore, the policy defines group plan as including any "automobile insurance policy written under the 'no-fault' insurance provisions of any state or federal laws." With such clear and unambiguous language, the policy cannot be construed to impose liability upon Connecticut General which it has not assumed. Therefore, we find the coordination of benefits provision of the Connecticut General policy to be valid and enforceable.

Since the coordination of benefits provision is valid and enforceable, Connecticut General was entitled to recover payments it made to Latrobe Area Hospital for services already paid by Allstate. Under this ruling, no genuine issue of material fact exists, and Connecticut General and Elliott Company are entitled to summary judgment.

## ORDER OF COURT

And now, February 2, 1987, it is hereby ordered that the motion for summary judgment, filed on behalf of defendants, Elliott Company and Connecticut General Life Insurance Company, is granted in their favor and against the plaintiff, Jack R. Thompson, personal representative of the estate of Helen M. Thompson, deceased.